O'BRIEN *v.* DUNN IRON MINING CO.[1]

CONTRACTS—ACTION TO ENFORCE—PRIVITY—CORPORATIONS.

Defendant corporation is not privy to, and is not liable on, a contract made by an individual with another corporation and its stockholders for the sale to him of all the latter's shares, though made for the purpose of enabling defendant to lawfully acquire the other corporation's property, and accompanied by a declaration of trust by the individual in favor of defendant's shareholders.

Error to Gogebic; Haire, J.   Submitted June 21, 1905. (Docket No. 40.)   Decided November 7, 1905.

Assumpsit by Michael P. O'Brien, George A. Curry and Charles M. Humphrey against the Dunn Iron Mining Company on a contract for the sale of a mining lease. There was judgment for plaintiffs, and defendant brings error.   Reversed.

---

[1]Rehearing denied June 4, 1906.

*S. S. Cooper* (*James G. Flanders*, of counsel), for appellant.

*James C. Wood* (*Charles M. Humphrey*, of counsel), for appellees.

HOOKER, J.   The plaintiffs were stockholders in a corporation, called the "Palms Ore Company." The property of that corporation consisted of a lease of certain mineral lands, and the machinery, etc., with which it conducted a mining business. It also had a quantity of iron ore which it had taken from its mine. The defendant was a mining corporation organized under the law of Wisconsin. The latter was desirous of acquiring the mine and other property belonging to the former, and negotiations were had, between its president, Ferdinand Schlesinger, and the plaintiffs, who were the only stockholders of the Palms Ore Company, and who managed its affairs. These negotiations appear to have assumed the form of an attempt to purchase the stock of the plaintiffs, in the Palms Ore Company, and the parties agreed upon terms therefor. On September 3, 1895, three contracts were reduced to writing, representing the agreement. Under its organic law the Dunn Iron Mining Company was prohibited from acquiring stock in other corporations. Hugo Schlesinger was not a party to the negotiations, and was not mentioned until after the terms of the arrangement were settled and were being written. It was then stated that the defendant could not purchase the stock, and that for personal reasons Ferdinand Schlesinger was unwilling to sign the contracts. It was suggested by him that he would get his brother, Hugo Schlesinger, to sign it for him, and the contracts were drawn, with Hugo Schlesinger as a party. The contracts were taken from Milwaukee to Chicago, and, upon a written request from Ferdinand, Hugo signed them without reading them, saying he did not care to read them, as his brother had given him instructions to sign all papers presented to him. The

contracts are lengthy, and we will endeavor to state their substance, rather than to incorporate copies.

The first was dated September 3, 1895, and purported to be made by and between the Palms Ore Company, party of the first part, the plaintiffs as party of the second part, and Hugo Schlesinger of Chicago, party of the third part. It provided: "That, whereas," the first party is owner of certain leasehold rights and interests (describing them), together with certain machinery, etc., under and by virtue of a lease, made May 20, 1895, between the trustees of Francis' Palms, deceased, and the Palms Ore Company (a copy being attached); and "whereas," parties of the second part are owners of all the stock of the Palms Ore Company, and the third party desires to purchase all of said stock, and operate the mine of said company: Now, therefore, in consideration of $1.00 received and mutual agreements made by each party, it was agreed that the third party should pay $12,500 upon the execution of the agreement, $5,000 as soon as he should have shipped 40,000 tons of ore from the mine, and a sum equal to 50 cents for each ton of ore shipped by him during the season of 1895 in excess of 40,000, payment to be made on or before December 1, 1895. On December 15, he was to pay $7,500, said $5,000 to be paid whether 40,000 tons be shipped or not. Following the foregoing were provisions for the payment of royalties, or the surrender of the mine to party of the first part, and to obtain advances, subject to certain restrictions and limitations. It further provided that, whenever payments aggregating $240,000 should be made, the entire capital stock should be delivered. Other provisions were contained in this writing, but we see no occasion to refer to them. The lease referred to (or a copy) was attached.

The second writing, made and executed contemporaneously with the one described, was signed by the plaintiffs and, being short, is given verbatim:

"In consideration of one dollar ($1) and other valuable considerations to us in hand paid, we, the undersigned,

Michael P. O'Brien, George A. Curry and Charles M. Humphrey, of the city of Ironwood, Michigan, do hereby agree that, in case Hugo Schlesinger, of Chicago, Illinois, shall pay us one hundred thousand dollars ($100,000) on or before the 15th day of December, 1895, we will transfer, assign, and set over unto said Hugo Schlesinger the entire capital stock of the Palms Ore Company, a Michigan corporation, the same being of the par value of fifty thousand dollars ($50,000).

"All amounts which said Schlesinger shall pay or shall have paid under a contract dated the third day of September, 1895, by and between the Palms Ore Company, as the first party, Michael P. O'Brien, George A. Curry and Charles M. Humphrey, as the second party, and Hugo Schlesinger, as the third party, unto the Palms Ore Company are to be considered as part payment of said one hundred thousand dollars and upon payment of said $100,000 as aforesaid, on or before the 15th day of December, 1895, the said contract of September 3, 1895, shall be considered completely fulfilled on his part.

"Dated September 3, 1895.

> "MICHAEL P. O'BRIEN.
> "GEORGE A. CURRY.
> "CHARLES M. HUMPHREY."

At the same time a third contract was made by and between the Milwaukee Trust Company, of the first part, the Palms Ore Company, the plaintiffs, and Hugo Schlesinger, all of the second part, to the effect that "whereas, the parties of the second part" had entered into two agreements before mentioned, and the plaintiffs had deposited the certificates of stock referred to, assigned in blank, "now, therefore," if Hugo Schlesinger shall pay to the party of the first part, for and on account of said agreements, the sum of $100,000 on or before December 15, 1895, the first party shall deliver said certificates to him; that if Hugo Schleslinger shall pay $240,000 on or before December 15, 1906, it shall deliver said certificates to him. Then followed some provisions for the redelivery of the stock to the plaintiffs in case of Hugo Schlesinger's failure to perform his agreement.

On September 4th Hugo Schlesinger executed and de-

livered to the owners of the stock of the Dunn Iron Mining Company the following declaration of trust:

" In consideration of one dollar and other valuable considerations to me in hand paid, I, Hugo Schlesinger, of the city of Chicago and State of Illinois, hereby state, declare, and acknowledge that all benefit and advantage derivable from me under a contract dated the 3d day of September, 1895, between the Palms Ore Company, as the first party, Michael P. O'Brien, George A. Curry, and Charles M. Humphrey, as the second party, and myself, as the third party, together with all benefit and advantage derivable by me under a contract dated September 3d, 1895, between myself and said O'Brien, Curry, and Humphrey, regarding the sale of stock in the Palms Ore Company to me, together with both of said contracts, are held by me for the benefit of and in trust for the owners of the stock of the Dunn Iron Mining Company in the several proportions which the stock in the said Dunn Iron Mining Company is held by the said stockholders respectively; and I hereby agree to transfer and set over at any time, upon request, all of said contracts, and all of my interest therein, the said cestui que trust and beneficiaries paying to me all sums which I may pay or be obligated for under said contracts.

" Witness my hand and seal this 4th day of September, 1895.

"HUGO SCHLESINGER."

Hugo Schlesinger appears to have allowed the Dunn Iron Mining Company to take possession of the mine, which it operated upon its own account. It made all payments which were made under the contract and on or before December 15, 1905, it caused to be paid the full sum of $100,000, stipulated, and the stock of the Palms Ore Company was transferred to Hugo Schlesinger. Thereupon the original lease was surrendered to the trustees of the Palms estate who executed a new lease to the Dunn Iron Mining Company. It will be seen that by these proceedings the Dunn Iron Mining Company succeeded in acquiring all of the property of the Palms Ore Company, as it was doubtless contemplated by all of the parties that it should do. It is claimed, however, by the plaintiffs, that

they have not been paid all of the sums stipulated by contract 1, and this action was brought against the Dunn Iron Mining Company to recover a balance claimed to be due for royalties and expenses of mining the 15,000 tons of ore. A set-off, consisting of alleged overpayment, was claimed by the defendant, and the judge, who tried the cause without a jury, rendered a substantial judgment for the plaintiff, upon which defendant has taken a writ of error.

It is contended that the Dunn Iron Mining Company could not lawfully purchase the stock of the Palms Ore Company, and it is claimed that a contract to do so would be absolutely void and unenforceable if made. This, if true, would obviate the necessity of discussing the questions of the agency of Hugo Schlesinger, and ratification and estoppel; for, if the Dunn Company had no power to make this contract, it could no more make it through an agent than through its officers, and it could not give vitality, by ratification, to a contract that it had not power to make, nor could it, by conduct, estop itself to deny its liability upon a contract which it was powerless to make. These seem to be self-evident propositions. We find it unnecessary to determine whether such a contract, if it had been made by the Dunn Company, would have been void or voidable, or whether the statute in question applies to the purchase by one corporation of the entire property of another corporation, in the accomplishment of which, and as a convenient method, all of the stock of the selling corporation is purchased by the buying corporation. The parties understood that the Dunn Iron Mining Company could not make this contract, and would not attempt it, and while it is plain that it was endeavoring to obtain benefits from the contracts, it was endeavoring to do it by legal methods, and without concealment. It arranged with Hugo Schlesinger to contract for this stock, and when he acquired it he canceled the lease, and a new lease was made to the Dunn Iron Mining Company, executed by the trustees of the Palms estate. That this program was pre-

arranged is probable, and plaintiffs must have known that their contract was with Hugo Schlesinger, and not with the Dunn Iron Mining Company.    This is not a case of *undisclosed principal*, but a case where all understoood that the Dunn Company was not making these contracts, because it could not, and that Hugo Schlesinger was making them to accommodate the Dunn Iron Mining Company, as a means of enabling it to lawfully acquire the lease and property of the Palms Ore Company.    Why the parties chose to take this course, instead of making a purchase and sale of the property and lease, we do not know, and it is unimportant.    There were probably good and sufficient reasons for it.  It is enough that they did not choose to do that.  Plaintiffs chose to sell their stock to Schlesinger, and, under these contracts, there is no privity between them and the Dunn Iron Mining Company which will support this action. Under the circumstances, there is a manifest propriety in omitting to determine the question relating to a construction of the contract until other parties shall be before the court, or a different showing made as to defendant's connection with the case.

The judgment is reversed, and a new trial ordered.

McALVAY, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.